**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

AMERICAN CENTER FOR LAW AND
JUSTICE,

       *Plaintiff*,

    v.

FEDERAL BUREAU OF INVESTIGATION,

      *Defendant*.

Case No. 1:19-cv-2643 (RC)

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
PARTIAL MOTION TO DISMISS**

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.   Statutory Framework ............................................................................ 2

    II.  Procedural History ............................................................................... 3

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.   FOIA Plaintiffs May Only Bring "Policy or Practice"
         Claims in Narrow Circumstances. .................................................... 7

    II.  Plaintiff Has Not Plausibly Alleged that Any Delay in the Processing
         of Its Request Is the Result of an Unlawful FBI Policy or Practice. ................. 10

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*ACLJ v. DOJ*,
   325 F. Supp. 3d 162 (D.D.C. 2018) ...................................................................... 12

*ACLJ v. DOJ*,
   334 F. Supp. 3d 13 (D.D.C. 2018) .................................................................. 5, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 6

*Cause of Action Inst. v. Eggleston*,
   224 F. Supp. 3d 63 (D.D.C. 2016) .................................................................. 7, 12

*Citizens for Responsibility & Ethics in Wash v. Fed. Election Comm'n*,
   711 F.3d 180 (D.C. Cir. 2013) .......................................................................... 2, 8

*Davis v. World Sav. Bank, FSB*,
   806 F. Supp. 2d 159 (D.D.C. 2011) ...................................................................... 7

*Elec. Privacy Info. Ctr. v. DOJ*
   15 F. Supp. 3d 32 (D.D.C. 2014) .......................................................................... 2

*Judicial Watch, Inc. v. DHS*,
   895 F.3d 770 (D.C. Cir. 2018) ..................................................................... *passim*

*LaShawn A. v. Barry*,
   87 F.3d 1389 (D.C. Cir. 1996) .............................................................................. 8

*Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*,
   540 F. Supp. 2d 231 (D.D.C. 2008) ...................................................................... 7

*Mo. Coal. for Env't v. U.S. Army Corps of Eng'rs*,
   369 F. Supp. 3d 151 (D.D.C. 2019) ................................................................. 9, 13

*Muckrock, LLC. v. CIA*,
   300 F. Supp. 3d 108 (D.D.C. 2018) .................................................................... 10

*Muttitt v. Dep't of State*,
   926 F. Supp. 2d 284 (D.D.C. 2013) ...................................................................... 7

*Nat. Res. Def. Council, Inc. v. EPA*,
  383 F. Supp. 3d 1 (D.D.C. 2019) ........................................................................... 10

*\*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ........................................................................... 7, 8

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
  768 F. Supp. 2d 117 (D.D.C. 2011) ........................................................................ 7

**STATUTES**

5 U.S.C. § 552 ................................................................................................... 2, 4

**RULES**

Fed. R. Civ. P. 12 .............................................................................................. 2, 15

## INTRODUCTION

Plaintiff, the American Center for Law and Justice ("ACLJ"), raises two claims in this Freedom of Information Act ("FOIA") case.  The first is a challenge to the Federal Bureau of Investigation's ("FBI") handling of a particular FOIA request—one seeking records from certain FBI officials, including former Director James Comey, about three individuals who either worked at the White House or dealt closely with White House officials.  That claim is not at issue at this juncture.  Plaintiff's second claim, however, paints with a considerably broader brush.  Plaintiff alleges that the FBI has adopted "a policy and practice of violating FOIA's procedural requirements when processing FOIA requests," and that it is therefore entitled to relief beyond the particular FOIA request at issue in this suit.  Compl. ¶¶ 63, 72, ECF No. 1.  The allegations in Plaintiff's complaint, however, fall far short of the facts that would be necessary to render such a "policy or practice" claim plausible.

Plaintiff points to only two prior FOIA requests—creating a sample size of three when the instant FOIA request is included—as evidence of the FBI's allegedly unlawful practice.  But even those three requests share little in common.  The requests address different topics, and the FBI handled the requests in starkly different fashion.  In one case, the FBI issued a letter indicating there were no responsive records before Plaintiff brought suit; in the second case, the FBI produced some responsive records before Plaintiff brought suit; and in the third case (the instant one), the FBI did not issue a determination before Plaintiff brought suit.  Plaintiff's complaint makes no attempt to stitch together these disparate threads.  At bottom, all Plaintiff has alleged is that, because it has filed three cases contesting the FBI's handling of FOIA requests, the FBI somehow has a policy or practice of violating FOIA.  The case law in the D.C. Circuit and the requirements

1

of Federal Rule of Civil Procedure 12(b)(6) demand more.  Accordingly, Count II of the complaint should be dismissed.

## BACKGROUND

### I.      Statutory Framework

FOIA provides a means for the public to access federal government records, subject to certain exemptions.  *See* 5 U.S.C. § 552.  Upon receipt of a properly submitted request that "reasonably describes" the records sought, *id.* § 552(a)(3)(A), an agency generally must determine within twenty days "whether to comply with such request" and then immediately notify the requestor of its determination and the reasons therefor.  *Id*. § 552(a)(6)(A)(i).[1]  The statute provides that if an agency fails to make a determination within twenty days and immediately notify the requestor, the requestor "shall be deemed to have exhausted his administrative remedies with respect to such request[.]"  *Id*. § 552(a)(6)(C)(i).  "If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW*").  The statute does not suggest any other consequence for an agency's failure to comply with this timeframe.  Rather, the twenty-day timeline—and an agency's failure to meet that timeline—sets forth a condition that must be met before a court may exercise or retain jurisdiction over an underlying FOIA claim.  *See Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("[F]ar from . . . reading . . . FOIA to require an agency to immediately hand over all of the requested documents as a result of its

---

[1] FOIA permits an agency to extend this twenty-day deadline by no more than ten days in "unusual circumstances."  *Id*. § 552(a)(6)(B)(i).

2

failure to meet the deadline, *CREW* makes clear that the impact of blowing the 20–day deadline relates *only to the requester's ability to get into court*.").

## II.    Procedural History

Plaintiff sent the FOIA request at issue in this case to the FBI on July 25, 2019. *See* Compl. ¶ 9; *see also id.*, Ex. A (a copy of the FOIA request). That request seeks communications with, and other records regarding, three individuals: Anthony Ferrante, Jordan Rae Kelly, and Tashina Gauhar. Compl. ¶ 9. The request asks for any such records within the custody of a lengthy list of FBI officials, namely, former Director James Comey, "General Counsel James Baker; Deputy Director/Acting Director Andrew McCabe; Deputy Assistant Director of Counterintelligence Peter Strzok, McCabe's Deputy Counsel, Lisa Page; and Comey's Chief of Staff, James Rybicki, David Bowdich (Director's Office - DO), Michael Steinbach (Director's Office - DO), Trisha Anderson (OGC), E.W. Bill Priestap (Counterintelligence Division - CD), and Jonathan Moffa (Counterintelligence Division - CD)." *Id.* The request asks for any such records within a three-year window—from January 1, 2016, through January 1, 2019. *See id.* ¶ 14. Additionally, the request asks for *all* of James Comey's emails from April 1, 2016, to May 31, 2017.[2] *See id.*, Ex. A at 4. Plaintiff sought expedited processing for its request. Compl. ¶ 16.

The FBI acknowledged receipt of the request by letter dated August 2, 2019, and assigned the request a tracking number. Compl. ¶ 18. A week later, the FBI sent Plaintiff a letter denying the request for expedited processing.[3] *Id.* ¶ 19. Plaintiff alleges that, after receiving the FBI's

---

[2] The "Background" section of the request provides some explanation for Plaintiff's interest in Mr. Ferrante, Ms. Kelly, and Ms. Gauhar, insofar as it alleges that all three either worked at the White House or dealt closely with White House officials. *See* Compl., Ex. A. But the request contains no explanation for why Plaintiff is asking the FBI to locate and process all of former Director Comey's emails from a fourteen-month period. *See id.*

[3] The complaint does not suggest that Plaintiff appealed that determination.

denial of expedited processing, Plaintiff has not received a further response from the FBI.  *See id.* ¶ 20.

On September 4, 2019, Plaintiff filed the instant suit.  *See* Compl. at 13.  Count I of the complaint alleges that the FBI is unlawfully withholding records that Plaintiff has requested.  *See id.* ¶ 57.  That count is not at issue in this motion.  The count that is at issue, Count II, raises a "policy or practice" claim.  *See* Compl. ¶¶ 63-72.  Specifically, Plaintiff alleges that "[t]he FBI has adopted and is engaged in a policy and practice of violating FOIA's procedural requirements when processing FOIA requests by intentionally refusing to produce all non-exempt documents in the manner required under 5 U.S.C. § 552(a)(6) . . . unless and until Plaintiff files suit."  *Id.* ¶ 63.

As support for its "policy or practice" claim, Plaintiff includes allegations about two other FOIA requests it sent to the FBI.  The first was sent to the FBI around July 15, 2016, and sought records concerning then-Attorney General Lynch's meeting with former President Bill Clinton at Sky Harbor International Airport (the "Lynch request").  Compl. ¶ 25.  The FBI issued a response to the Lynch request on October 21, 2016, indicating the agency had not located records responsive to the request.  *Id.*  That response was issued without Plaintiff having brought suit.  *See id.* ¶ 30.

In July 2017, however, Plaintiff alleges that it became aware that the FBI had documents that were, in fact, responsive to the Lynch request.  *See id.* ¶ 27.[4]  The FBI subsequently reopened the Lynch request and acknowledged that it might possess potentially responsive records.  *Id.* ¶ 28.  Approximately a month after the FBI reopened the Lynch request, Plaintiff filed suit to obtain responsive records.  *See id.* ¶¶ 28, 30.  Plaintiff alleges that, six months after it brought suit, the

---

[4] Defendant assumes the complaint's reference to "Plaintiff's July 15, 2019, FOIA Request" is a reference to the Lynch request, with was submitted on July 15, *2016*.  *Compare* Compl. ¶ 27, *with id.* ¶ 25.

FBI produced 29 pages of responsive documents that included redactions under FOIA Exemptions 5, 6, and 7.  *Id.* ¶ 31.[5]

During summary judgment briefing, the FBI allegedly agreed to conduct another search for responsive documents—a search that resulted in the production of additional records to Plaintiff.  *See* Compl. ¶¶ 33-34.  Plaintiff claims that the FBI nonetheless continued to withhold non-exempt, responsive information—specifically, factual information in talking points—and that it "was forced again to challenge the FBI's unlawful withholding and delay" before the D.C. Circuit.  *Id.* ¶ 35.  The complaint omits, however, that the intervening event that "forced" Plaintiff to raise the issue before the D.C. Circuit was an unfavorable decision in district court.  Specifically, Judge Mehta reviewed the records *in camera* and held that "[t]he factual contents of the talking points . . . are not segregable" and, accordingly, that "Defendant properly withheld them in full." *ACLJ v. DOJ*, 334 F. Supp. 3d 13, 22 (D.D.C. 2018) (consistent with n.5, this case is hereinafter referred to as "*ACLJ I*").  Before the FBI was due to file its brief in the D.C. Circuit, Plaintiff alleges, the FBI produced the talking points Plaintiff sought.  *See* Compl. ¶ 36.[6]

The second FOIA request recounted in the complaint was sent to the FBI on or about September 7, 2017, and sought records concerning the FBI's investigation of Hillary Clinton and

---

[5] In support of this allegation, Plaintiff cites to the complaint in *ACLJ v. FBI*, No. 18-cv-373 (D.D.C.) ("*ACLJ II*").  *See* Compl. ¶ 31.  That appears to be an error, as that complaint makes no mention of the Lynch request and pertains only to the *other* ACLJ FOIA request discussed in the complaint (referred to *infra* as the "Clinton request").  The complaint that pertains to the Lynch request was filed in *ACLJ v. DOJ*, No. 17-cv-1866 (D.D.C.) ("*ACLJ I*").  That complaint is attached hereto as Exhibit 1.  *See infra* at 7 (explaining that documents upon which the plaintiff's complaint necessarily relies may be considered in assessing a motion to dismiss).

[6] The complaint alleges this production took place in June 2016.  *See* Compl. ¶ 36.  But given that the Lynch request was sent in *July* 2016, *see id.* ¶ 25, and in light of the fact that Judge Mehta issued his summary judgment decision in September 2018, *see ACLJ I*, 334 F. Supp. 3d at 13, this production presumably occurred in June 2019.

the decision not to pursue charges against her (the "Clinton request").  *See* Compl. ¶37.  Plaintiff alleges that the FBI acknowledged receipt of that request "but did not produce *all* documents responsive to Plaintiff's FOIA request in the time period required by FOIA."  *Id.* ¶ 38 (emphasis added).  Plaintiff then filed suit and then allegedly began receiving documents.  *See id.* ¶ 41.  But according to the complaint from that lawsuit, which is incorporated here by reference, Plaintiff received a determination letter from the FBI, dated October 16, 2017, which noted that records responsive to a portion of Plaintiff's request had been processed and made available online.  *See* Compl. ¶ 20, *ACLJ II*, No. 18-cv-373 (D.D.C.), ECF No. 1 (attached hereto as Exhibit 2).

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint satisfies this plausibility standard when the "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678. Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Moreover, although courts are to presume the truth of all factual allegations in the complaint, they need not and should not accept "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (brackets in original).  Similarly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.

In evaluating the sufficiency of the complaint, "a court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'" *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 70 (D.D.C. 2016) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)); *see also Marcelus v. Corr. Corp. of Am./Corr. Treatment Facility*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008) (documents referenced in the complaint deemed to be incorporated). "Further, 'when the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail.'" *Davis v. World Sav. Bank, FSB*, 806 F. Supp. 2d 159, 172 (D.D.C. 2011) (citation omitted).

## ARGUMENT

### I.    FOIA Plaintiffs May Only Bring "Policy or Practice" Claims in Narrow Circumstances.

A "policy or practice" claim under FOIA, sometimes referred to as a "pattern and practice" claim, is a narrow exception to the principle that FOIA lawsuits must be litigated based on individual FOIA claims (and that such claims are moot once the requested documents are provided). *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-91, 494 (D.C. Cir. 1988). Generally, "once all requested records are surrendered" in response to a FOIA request, "'federal courts have no further statutory function to perform' with respect to the particular records that were requested." *Id.* at 490-91 (citation omitted). The rule is different only if a Plaintiff has alleged "facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enters.*, 837 F.2d at 491).

The facts of *Payne Enterprises* illustrate the high bar a plaintiff must clear in establishing such a claim.  There, for almost two years, officers at Air Force Logistics Command ("AFLC") bases "refused to fulfill Payne's requests for copies of bid abstracts when there was limited competition for a contract," even though the Secretary of the Air Force had determined that "no FOIA exemption applied."  *Payne Enters.*, 837 F.2d at 494.  The officers were admonished by the Secretary's Office, but no firm action was taken to end their recalcitrance.  *See id.*  Thus, "[t]he Secretary's inability to deal with AFLC officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offer[ed] no justification, entitle[d] Payne to declaratory relief."  *Id.*

The D.C. Circuit's recent decision in *Judicial Watch, Inc. v. DHS*, 895 F.3d 770 (D.C. Cir. 2018), similarly emphasized the degree to which a "policy or practice" claim is viable only in the wake of repeated conduct that raises serious concerns.  There, a divided panel of the court held that "a plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records . . . and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future." *Id.* at 780.[7]   At issue in *Judicial Watch* were numerous requests to the Secret Service for information on the use of government funds for "VIP" travel.  *See id.* at 773.  Specifically, the complaint described "nineteen travel-related FOIA requests submitted over a thirteen-month period," for which the Secret Service had not produced the requested records.  *Id.* at 773-74.  The

---

[7] Defendants note that the *Judicial Watch* panel could not have overruled the clear holding of *CREW*—that an agency's failure to "adhere to FOIA's explicit timelines" is not an actionable violation of FOIA but simply triggers a requester's ability to obtain judicial oversight of the agency's response, 711 F.3d at 189—nor should it be considered to have done so.  *See, e.g., LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc) ("One three-judge panel . . . does not have the authority to overrule another three-judge panel of the court." (citation omitted)).

plaintiff filed suit concerning those nineteen requests after it had already filed five separate lawsuits, over a three-year period, seeking similar records.  *See id.* at 773.  In reaching the conclusion that the plaintiff had plausibly alleged a pattern or practice claim, the Court applied a fact-specific analysis applicable to the particular case before it—consistently highlighting that "Judicial Watch's complaint reflects that it has repeatedly been confronted with prolonged, unexplained delays[.]"  *Id.* at 780; *see also id.* at 782 (describing "[t]he Secret Service's alleged practice of prolonged, repeated, and unexplained delay").

In particular, the D.C. Circuit noted two ways in which the Secret Service's handling of the plaintiff's FOIA requests followed a clear pattern.  First, the agency consistently "employed the same non-responsive conduct"—*i.e.*, it would acknowledge receipt of a request, assign a tracking number, but "remain mute until Judicial Watch filed a lawsuit[.]"  *Judicial Watch*, 895 F.3d at 779; *see also id.* at 780-81 (holding that "Judicial Watch alleges sufficient facts . . . to 'draw the reasonable inference' that the Secret Service has adopted a practice of delay . . . by repeatedly standing mute over a prolonged period of time" (citation omitted)).  Second, the "six lawsuits to obtain requested non-exempt records . . . all relat[ed] to the same subject matter," *i.e.*, VIP travel.  *Id.* at 782; *see also id.* at 787 (Pillard, J., concurring) ("With allegations of 29 similar requests across six lawsuits met by unexplained months of waiting for the Secret Service to produce responsive records, the complaint makes out a consistent practice of delay in violation of FOIA.").  Not only were the requests similar, but in the court's view, the requests were also relatively straightforward to process.  *See id.* at 784 (rejecting suggestion that "Judicial Watch's requests were 'complex'"); *id.* at 788 (Pillard, J., concurring) (adopting an "inference in Judicial Watch's favor that its VIP-travel expense requests are wholly straightforward").

District courts applying the standard set in *Payne* and *Judicial Watch* have looked to those same two factors—(1) whether the agency processed the requests in a similar manner, and (2) whether the requests themselves are similar—in assessing "policy or practice" claims.  *See Mo. Coal. for Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159–60 (D.D.C. 2019) (finding that the plaintiff had "provided undisputed evidence of five instances, across two Corps districts, over four years, in which the [Army] Corps [of Engineers] improperly withheld the same types of documents . . . based on the same improper application of Exemption 5"); *Muckrock, LLC. v. CIA*, 300 F. Supp. 3d 108, 135-37 (D.D.C. 2018) (holding that the CIA employed an unlawful practice where it "treated four of [the plaintiff's] requests for emails in exactly the same way" by requiring the plaintiff "to provide the specific 'to' and 'from' recipients, time frame and subject" for the requests (citation omitted)); *cf. Nat. Res. Def. Council, Inc. v. EPA*, 383 F. Supp. 3d 1, 13 (D.D.C. 2019) (explaining that "to bring a policy or practice claim under *Payne*, a plaintiff 'must allege a [policy or practice] amounting to *a persistent failure* to adhere to FOIA's requirements'" (emphasis added) (quoting *Judicial Watch, Inc.*, 895 F.3d at 780)).

## II.   Plaintiff Has Not Plausibly Alleged that Any Delay in the Processing of Its Request Is the Result of an Unlawful FBI Policy or Practice.

The allegations in Plaintiff's complaint fall far short of what is needed to state a FOIA "policy or practice" claim.  As an initial matter, the complaint fails to consistently identify the particular policy or practice it is challenging.  At times, Plaintiff alleges that the FBI's practice is to not do *anything* in response to a FOIA request, "aside from acknowledgment of receipt and assignment of a control number," "unless and until Plaintiff initiate[s] a lawsuit[.]"  Compl. ¶ 24; *see also id.* ¶ 67 ("In this case, just as in the two other FOIA cases Plaintiff has filed against the FBI, Plaintiff's FOIA request went *unanswered* and the FBI refused to respond in the manner required by FOIA and within the deadline(s) mandated by FOIA until Plaintiff sought legal

action." (emphasis added)).  But Plaintiff undermines that characterization by acknowledging that it *has* received responses before bringing suit, *see id.* ¶ 26, and then suggesting that the allegedly unlawful practice actually relates to the "improper withholding of factual information" from responsive records, *id.* ¶ 42.  Finally, the most specific practice Plaintiff alleges is that, when faced with a lawsuit in response to a FOIA request, the FBI "will moot the litigation and escape judicial review of its compliance with FOIA by complying with the requirements of FOIA in the final hours of the parties' briefing on the matter." *Id.* ¶ 43.  Thus, as a threshold matter, Plaintiff cannot plausibly allege that the FBI has an unlawful policy or practice if it cannot define what that practice is.  And as explained below, not one of the practices Plaintiff *has* alleged was followed consistently in relation to the three FOIA requests Plaintiff discusses in its complaint.

Plaintiff's inconsistency in describing the FBI's practices makes sense in light of the fact that the FBI's handling of the three FOIA requests Plaintiff discusses—the Lynch request, the Clinton request, and the instant request—follows no discernable pattern.  For instance, although Plaintiff did not receive a "determination" in response to its FOIA request before filing suit here, *see* Compl. ¶ 21, it *did* receive a determination in response to both the Lynch request and the Clinton request before bringing suit, *see id.* ¶ 26 (describing a letter informing Plaintiff of no responsive records); Compl. ¶¶ 20, 23, *ACLJ II* (Ex. 2) (recounting that the FBI made responsive records available to the ACLJ and that the ACLJ appealed "the FBI's October 16, 2017 determination letter").  Thus, unlike in *Judicial Watch*, where the complaint alleged that the agency had not "conducted a search" for responsive records until after the plaintiff filed suit, 895 F.3d at 780, here, the FBI had gone so far as to issue determination letters for two of the three FOIA requests on which Plaintiff relies.

Similarly, Plaintiff claims the FBI has a pattern of "complying with the requirements of FOIA in the final hours of the parties' briefing," thereby "moot[ing] the litigation and escap[ing] judicial review[.]"  Compl. ¶ 43.  But of the three FOIA requests Plaintiff has mentioned, that "pattern" stems from *one* request—the Lynch request, which is the only request that Plaintiff alleges ever reached the briefing stage.[8]  *Compare id.* ¶¶ 33, 36 (describing briefing on the Lynch request), *with id.* ¶ 41 (describing the FBI's production of "the documents to which Plaintiff was entitled" in response to the Clinton request, without any mention of briefing).  Of course, a plaintiff "falls short of pleading any 'policy or practice' of violating FOIA" where, "of the various FOIA requests at issue in th[e] case, Plaintiff only alleges facts showing that one" request was subject to the allegedly unlawful practice.  *Cause of Action*, 224 F. Supp. 3d at 71.

Moreover, the alleged pattern does not even hold *within* that one case.  The second alleged example of the FBI attempting to "moot the litigation and escape judicial review" with respect to the Lynch request, Compl. ¶ 43, occurred after a district court had already provided judicial review of the specific withholdings that Plaintiff describes as unlawful, *see id.* ¶ 35 (describing the "unlawful withholding and delay in producing" "information contained within talking points").  Not only did Judge Mehta hold that the FBI "properly withheld [the talking points] in full," he did so after "reviewing the withheld material *in camera*[.]"  *ACLJ I*, 334 F. Supp. 3d at 22.  Moreover, Judge Mehta explained that Judge Kelly had also awarded the government a favorable decision *on the same issue*.  *See id.* at 20 (citing *ACLJ v. DOJ*, 325 F. Supp. 3d 162, 165 (D.D.C. 2018)).  It is unclear how an agency's decision to make a voluntary production of the kind of information that two different judges had permitted it to withhold—including, in at least one case, after *in camera*

---

[8] The Lynch request is also the only one of the three requests at issue here where Plaintiff alleges the FBI unlawfully withheld factual information from responsive records.  *See* Compl. ¶ 35.

review—could *ever* permit the inference that the agency was actually just implementing an unlawful practice.  But Plaintiff certainly has not provided a plausible explanation of what that practice could be here.

To recap:  According to Plaintiff, the FBI sometimes provides the ACLJ with responsive records (but not all the records it is entitled to), sometimes determines that there are no responsive records (but later revises that determination), and sometimes does not issue a determination until after the ACLJ has brought suit.  Those allegations do not allow the conclusion that the FBI has "employed the same non-responsive conduct" in handling the ACLJ's requests.  *Judicial Watch*, 895 F.3d at 779.

Moreover, even if there were some consistent thread running through the FBI's responses to these three FOIA requests, Plaintiff's allegations would still fall short of a plausible "policy or practice" claim.  The first factor supporting that conclusion is that Plaintiff has not alleged that the FOIA requests "all relat[e] to the same subject matter."  *Judicial Watch*, 895 F.3d at 782.[9]  To be sure, FOIA requests do not *need* to address the same subject to support a pattern or practice claim, but the closer the subject matter of the requests, the more plausible it is that they were handled pursuant to the same policy or practice.  *See, e.g.*, *Mo. Coal. for Env't*, 369 F. Supp. 3d at 159-60 (highlighting "five instances" where the defendant agency "improperly withheld the same types of documents . . . based on the same improper application of Exemption 5").

Second, the fact that Plaintiff identifies only three FOIA requests, and uses those three requests to try to define a policy or practice, contributes to the conclusion that Plaintiff's claim is

---

[9] Any such allegation would be implausible, given that the requests cover distinct topics (a meeting between the Attorney General and Bill Clinton, the investigation of Hillary Clinton, and three individuals who worked with former-Director Comey and his colleagues).

implausible.  As a general matter, it is hard to see how three FOIA requests, handled over the course of approximately three years, could constitute a sufficiently large sample size to support a plausible "policy or practice" claim.  But that is particularly true in light of the other deficiencies in Plaintiff's allegations.  Because Plaintiff has not identified a pattern of *specific* FBI conduct, and because Plaintiff's requests cover a range of topics, there are too many variables at play for a sample size of three to yield anything more than a "sheer possibility that [the] defendant has acted unlawfully."  *See Iqbal*, 556 U.S. at 678.  Put differently, the fewer examples a plaintiff cites of an alleged policy or practice, the more consistent those examples have to be in order for it to be plausible that the alleged policy or practice actually exists.

To that end, Plaintiff's complaint does not even allege that the three examples it cites in the complaint are a representative sample.  There are no allegations about how many requests the ACLJ has submitted to the FBI, and there are no non-conclusory allegations that speak to whether the policy or practice applies only to the three cited FOIA requests or to others as well.  If the three FOIA requests at issue here are the only requests the ACLJ has ever sent to the FBI, then the FBI's handling of those requests is more probative of the agency's practices than if they are three of many.  But if the ACLJ has submitted numerous requests to which it has received varied responses, then the FBI's handling of the three disparate requests at issue here would actually demonstrate a *lack* of any policy or practice.  And again, although an allegation about representativeness may not be *required* to state a "policy or practice" claim, the absence of any such allegation renders the claim less plausible.

In sum, Plaintiff has not plausibly alleged that the FBI has a specific, unlawful pattern or practice.  Instead, it has claimed that the FBI failed to comply with FOIA on three separate, dissimilar occasions, and it has applied the "policy or practice" label to those facts.  But that

approach—applying a bare legal conclusion to facts that do not otherwise state a facially plausible

claim to relief—cannot survive a Rule 12(b)(6) motion to dismiss.  Accordingly, Plaintiff's "policy

or practice" claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Count II

of Plaintiff's complaint.

Dated: November 20, 2019                    Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General

                                             ELIZABETH J. SHAPIRO
                                             Deputy Director

                                             */s/ Michael H. Baer*
                                             MICHAEL H. BAER
                                             Trial Attorney (New York Bar No. 5384300)
                                             U.S. Department of Justice,
                                             Civil Division, Federal Programs Branch
                                             1100 L Street NW
                                             Washington, DC 20530
                                             Telephone: (202) 305-8573
                                             Facsimile:  (202) 616-8470
                                             E-mail:      Michael.H.Baer@usdoj.gov

                                             *Counsel for Defendant*

15
