UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-2643 (RC) |
| | : | | |
| v. | : | Re Document No.: | 11 |
| | : | | |
| FEDERAL BUREAU OF INVESTIGATION, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

**I. INTRODUCTION**

In this Freedom of Information Act ("FOIA") case, the American Center for Law and Justice ("ACLJ") has sued the Federal Bureau of Investigation ("FBI"). ACLJ makes two claims: first, that the FBI violated FOIA by not responding to a particular request for records within the statutory timeframe; and second, that this particular violation suggests a wider policy, pattern, or practice of noncompliance by the agency. The FBI has now moved to dismiss the latter "policy-or-practice" claim. For the reasons explained below, the Court agrees that the policy-or-practice claim is deficient and will therefore grant the partial motion to dismiss.

**II. BACKGROUND**

According to the complaint, ACLJ is a not-for-profit organization that "seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law." Compl. ¶ 5, ECF No. 1. On July 25, 2019, it submitted FOIA requests to the FBI and the Department of Justice ("DOJ") seeking records from certain FBI officials, including former Director James

Comey,[1] concerning three individuals that worked at the White House: Anthony Ferrante, Jordan Rae Kelly, and Tashina Gauhar. Compl. Ex. 1 at 1–4, ECF No. 1-1. The request also sought "[a]ll of James Comey's emails from April 1, 2016, to May 31, 2017." *Id.* at 4 (emphasis removed). By a letter dated August 2, 2019, the FBI acknowledged receipt of the request and assigned it a tracking number. Compl. ¶ 18. Then, in a letter dated August 9, 2019, the FBI denied expedited processing, which ACLJ had sought along with its request. *Id.* ¶ 19. ACLJ did not receive any further response from the FBI before it filed this suit on September 4, 2019. *Id.* ¶ 20.

The complaint itself advances two claims. The first (Count I) alleges that the FBI violated FOIA by not issuing a determination about whether it would comply with ACLJ's request within twenty days, as the statute generally requires. *Id.* ¶¶ 49–50 (citing 5 U.S.C. § 552(a)(6)(A)). The second (Count II) alleges more broadly that "[t]he FBI has adopted and is engaged in a policy and practice of violating FOIA's procedural requirements when processing FOIA requests by intentionally refusing to produce all non-exempt documents in the manner required under 5 U.S.C.§ 552(a)(6) and unless and until Plaintiff files suit." *Id.* ¶ 63. As support for the policy-or-practice claim, the complaint cited the violation alleged in Count I, plus two other FOIA cases in which the FBI had allegedly acted similarly. *Id.* ¶ 67 ("In this case, just as in the two other FOIA cases Plaintiff has filed against the FBI, Plaintiff's FOIA request went unanswered and the FBI refused to respond in the manner required by FOIA and within the deadline(s) mandated by FOIA until Plaintiff sought legal action."). Because the specifics of

---

[1] The other named officials included James Baker, Andrew McCabe, Peter Strzok, Lisa Page, James Rybicki, David Bowdich, Michael Steinbach, Trisha Anderson, E.W. Bill Priestap, and Jonathan Moffa. Compl. Ex. 1 at 3–4, ECF No. 1-1.

these two earlier requests undergird the policy-or-practice claim, they are worth discussing in some detail. For present purposes, the Court credits ACLJ's account of both requests.

On or about July 15, 2016, ACLJ "issued a FOIA request to the FBI seeking information relating to then-Attorney General Lynch's June 27, 2016, meeting with former President Bill Clinton at Sky Harbor International Airport." *Id.* ¶ 25. Approximately four months after the request issued, the FBI informed ACLJ that no responsive records had been located. *Id.* ¶ 26. After another eight months, ACLJ became aware—through a separate lawsuit filed against DOJ—that the FBI did in fact possess responsive documents. *Id.* ¶ 27. After ACLJ contacted the Office of Government Information Services, the FBI reopened the request and admitted it might have potentially responsive records. *Id.* ¶ 28. The FBI did not actually produce any documents, however, and ACLJ filed a lawsuit compelling disclosure on September 12, 2017. *Id.* ¶¶ 30–31 (citing Compl., *Am. Ctr. for Law & Justice v. Dep't of Justice*, No. 17-cv-1866 (D.D.C. Sept. 12, 2017), ECF No. 1).[2] After the suit was filed, the FBI produced 29 pages of documents with redactions, *id.* ¶ 31, but ACLJ continued to challenge the adequacy of the agency's search and at least some of its withholdings, *id.* ¶ 32. In the midst of summary judgment briefing, the FBI agreed to conduct another search for responsive records and eventually produced additional documents. *Id.* ¶¶ 33–34. "The FBI continued, however, to withhold non-exempt information contained within talking points," which forced ACLJ "again to challenge the FBI's unlawful withholding and delay in producing the information in the United States District Court of Appeals of the District of Columbia [sic]." *Id.* ¶ 35.[3] However, "on the

---

[2] These paragraphs in the Complaint actually cite to the second case (discussed below), but it is clear from the date and other context that ACLJ actually meant to refer to Case No. 17-cv-1866.

[3] The complaint is not entirely clear on this point, but it appears that the FBI continued to withhold the talking points because it prevailed on the relevant issue before the district court

eve of the FBI's deadline to submit its brief," the FBI finally produced the talking points "in an effort to moot Plaintiff's case." *Id.* ¶ 36.

On or about September 7, 2017, ACLJ "issued another FOIA request seeking records from the FBI regarding its investigation and decision not to pursue criminal charges against Hillary Rodham Clinton." *Id.* ¶ 37. "Just as in the current lawsuit, the FBI acknowledged receipt of [ACLJ's] FOIA request and assigned case control numbers, but did not produce all documents responsive to Plaintiff's FOIA request in the time period required by FOIA" or "notify Plaintiff of a determination and the reasons therefore." *Id.* ¶¶ 38–39 (citing Compl., *Am. Ctr. for Law & Justice v. Dep't of Justice*, No. 18-cv-373 (D.D.C. February 19, 2018), ECF No. 1) (internal alterations omitted). Only after ACLJ filed suit did the agency begin producing documents. *Id.* ¶ 41.

The FBI has now filed a partial motion to dismiss directed solely at Count II, the policy-or-practice claim. *See* Def.'s Partial Mot. to Dismiss, ECF No. 11. The motion is fully briefed and ripe for the Court's consideration.

### III. LEGAL STANDARD

The Court must dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, the Court "must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The Court need not accept as true, however, "a legal conclusion

---

(thereby prompting ACLJ's appeal). *See Am. Ctr. for Law & Justice v. Dep't of Justice*, 334 F. Supp. 3d 13, 22 (D.D.C. 2018) (granting the FBI's motion for summary judgment).

4

couched as a factual allegation" or "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (first quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986); then quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

A count will survive so long as there is a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Said differently, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This means that a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. ANALYSIS

### A. The Standard for Policy-or-Practice Claims

"FOIA section 552(a)(4)(B) vests courts with broad equitable authority." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 846 F.3d 1235, 1241 (D.C. Cir. 2017). And the Supreme Court has made clear that FOIA does not "limit the inherent powers of an equity court." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 20 (1974). Accordingly, our Circuit has generally endorsed a district court's "equitable power" to "enforc[e] [FOIA's] terms." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotation Bd.*, 415 U.S. at 19–20). In practice, this means a plaintiff can "bring, in conjunction with her specific information request, 'a claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Am. Ctr. for Law & Justice v.*

*Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (quoting *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)). The Circuit has endorsed this kind of "policy-or-practice" claim on three occasions.

The first instance came in *Payne*. There, the petitioner's FOIA requests for copies of Air Force-related bid abstracts—which had been routinely granted in the past—began to be repeatedly and perfunctorily denied by the relevant base officers. 837 F.2d at 487. When Payne appealed these denials to the Secretary of the Air Force, the officers' decisions were reversed without exception. *Id.* The Secretary's Office had even sent letters to relevant base commanders, noting that no FOIA exemption properly applied and admonishing them for their refusal to grant Payne's requests. *Id.* at 494. Even then, the officers continued to deny Payne's requests, requiring further, "invariably successful" administrative appeals. *Id.* at 487. The Circuit concluded that "[t]he Secretary's inability to deal with [the] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification" entitled Payne to declaratory, and possibly injunctive, relief. *Id.* at 494–95.

The second came in *Newport*, which involved a sales data company that had regularly sought certain technical information from the Air Force. 685 F.3d at 162. In the suit, the company challenged the Air Force's "practice of denying FOIA requests for data that d[id] not depict 'critical technology,' and thus requiring Newport to seek the data under the restrictive terms" of a particular Department of Defense policy directive governing disclosures. *Id.* at 164. The Circuit concluded that the plaintiff had identified a policy or practice (essentially, a particular interpretation of a FOIA exemption) that was sufficient to pass muster under *Payne*. *See id.* (reasoning that Newport's "business depends on continually requesting and receiving documents that the policy permits the Air Force to withhold in the absence of bid or contract

information that Newport cannot always provide; and the Air Force has no intention of abandoning that policy because it does not believe the policy violates FOIA.").

The final and most recent example came in *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 773 (D.C. Cir. 2018). There, Judicial Watch had for years been monitoring governmental expenditures on VIP travel by submitting FOIA requests to the Secret Service. *Id.* at 773. On five separate occasions between 2012 and 2014, Judicial Watch had resorted to suing in court when the Secret Service failed to make requested records available. *Id.* And whenever it did so, the Secret Service produced non-exempt records, thereby mooting the litigation. *Id.* After these episodes, Judicial Watch submitted another nineteen FOIA requests to the Secret Service, this time focusing on expenditure records for travel by then-President Obama and other VIPs. *Id.* at 776. After acknowledging receipt of and assigning tracking numbers to seventeen of the nineteen requests, the Secret Service took no action and issued no further responses. *Id.* Judicial Watch then filed yet another suit, now adding a policy-or-practice claim and seeking injunctive relief. *Id.* As summarized by the majority, "Judicial Watch's complaint posit[ed] that the Secret Service has an informal practice, harmful to Judicial Watch's mission and work, of repeatedly withholding 'nearly identical' records, without explanation, for unreasonable periods of time." *Id.* at 779 (quoting Judicial Watch's complaint).

A split panel began by acknowledging that "Judicial Watch does not allege agency misconduct in invoking FOIA exemptions as occurred in *Payne* or good-faith agency error in interpreting a FOIA exemption as occurred in *Newport*." *Id.* at 779. But nonetheless, it found that a plaintiff could make a "plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has

a policy or practice of ignoring FOIA's requirements." *Id.* at 780.  And it concluded that Judicial Watch's allegations were sufficient under this standard:

> The history of the Secret Service's conduct in response to Judicial Watch's FOIA requests, as alleged in the complaint, wherein Judicial Watch has been forced to file six lawsuits to obtain requested non-exempt records—all relating to the same subject matter—sufficed to state a plausible claim that the agency's practice was to utilize delay to flaunt FOIA's procedural requirements, and that filing a lawsuit to obtain requested records was an empty gesture in terms of preventing future prolonged delays, much less obtaining future relief, because the agency would moot the litigation and escape judicial review of its compliance with FOIA.

*Id.* at 782.  Concurring, Judge Pillard specifically mentioned the "allegations of 29 similar requests across six lawsuits met by unexplained months of waiting" and noted that the requests themselves appeared "wholly mundane."  *Id.* at 787–88 (Pillard, J., concurring).

### B. Application

The key question is whether ACLJ's complaint alleges sufficient facts under *Payne*, *Newport*, and *Judicial Watch* to allow "'the reasonable inference' that the [FBI] has adopted"—formally or informally—"a practice of delay," *Judicial Watch*, 895 F.3d at 780–81 (citations omitted), or whether the complaint alleges "merely isolated mistakes by agency officials," *Payne*, F.2d at 491.

For its part, ACLJ discerns a pattern from three alleged lapses.  First, in this case, the FBI acknowledged receipt of the requests but failed to issue within 20 days any determination about whether it would comply with the requests, as generally required by 5 U.SC. § 552(a)(6)(A)(i).  *See* Compl. ¶¶ 18–20.  Second, in the Lynch case, the FBI likewise missed the statutory deadline—it did not respond until almost four months after the ACLJ's request, and then released documents only after ACLJ filed suit.  *See id.* ¶¶ 26–31.  And finally, in the Clinton case, the FBI again failed to issue a timely determination and only began producing documents

8

after ACLJ filed suit.  *See id.* ¶¶ 38–40.  Taken together, says ACLJ, these episodes represent a "practice of prolonged, repeated and unsupported or unexplained delay." *Id.* ¶ 44.

The Court is not convinced that these episodes allow the required inference.  First, ACLJ's three prior examples each implicate requests of strikingly different subject matter and scope (roughly, records of a meeting between a former President and the Attorney General, records relating to possible criminal charges against a former Secretary of State, and all the emails of a former FBI director within a particular period).  This contrasts markedly with *Payne*, *Newport*, and *Judicial Watch*, each of which concerned repeated requests for a narrowly-defined class of documents (bid abstracts, technical information concerning military equipment, and VIP travel expenses).  To be sure, the Circuit has never articulated a "single subject" or "single type of request" requirement for a policy-or-practice claim.  But the similarity of the underlying requests is a factor courts take into consideration, as it suggests that the agency's behavior stems from a considered decision (for example, the applicability of a particular exemption to a particular category of documents) rather than isolated mistakes.  *See Mo. Coal. for Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159–60 (D.D.C. 2019) (claim involved "undisputed evidence of five instances, across two Corps districts, over four years, in which the [Army] Corps [of Engineers] improperly withheld the same types of documents . . . based on the same improper application of Exemption 5"); *Muckrock, LLC v. Cent. Intelligence Agency*, 300 F. Supp. 3d 108, 114 (D.D.C. 2018) (claim involved identical responses to four "similar requests" seeking email records); *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 230 (D.D.C. 2011) (claim involved "factually specific allegations" about "ten requests for estimated completion dates that did not receive an adequate response").  And even in *Judicial Watch*, which arguably widened the standard for a policy-or-practice claim beyond *Payne* and *Newport*, the majority and

9

concurrence both emphasized that the records all concerned the same subject matter.  895 F.3d at 782 (noting that the requests "all relat[ed] to the same subject matter"); *id.* at 787 (Pillard, J., concurring) (noting that the requests at issue all sought "the very same kind of information").

      Second, the FBI's behavior across each of the three episodes was not uniform, and ACLJ's complaint does not consistently identify or describe the offensive practice.  For example, the complaint occasionally suggests that the problem is that the FBI does not respond to a request, "aside from acknowledgment of receipt and assignment of a control number," "unless and until Plaintiff initiate[s] a lawsuit[.]"  Compl. ¶ 24; *see also id.* ¶ 67 ("In this case, just as in the two other FOIA cases Plaintiff has filed against the FBI, Plaintiff's FOIA request went unanswered and the FBI refused to respond in the manner required by FOIA and within the deadline(s) mandated by FOIA until Plaintiff sought legal action.").  However, in the Lynch case, the FBI *did* issue a conclusive determination (albeit an untimely and ultimately incorrect one) before ACLJ filed suit.  *Id.* ¶ 26.  Elsewhere, ACLJ suggests the problem is that "[a]s Plaintiff's prior lawsuits against the FBI demonstrate, the filing of a lawsuit to obtain all requested records is 'an empty gesture,'" "because the FBI will moot the litigation and escape judicial review of its compliance with FOIA by complying with the requirements of FOIA in the final hours of the parties' briefing on the matter."  *Id.* ¶ 43.  Yet this kind of eve-of-briefing tactic was only alleged to have occurred in one suit: the Lynch litigation.  *Id.*  Certainly, an agency's behavior need not be entirely consistent to support a policy-or-practice claim.  *See Judicial Watch*, 895 F.3d at 779 (noting that across the nineteen requests at issue in the case, the Secret Service acknowledged receipt of but had no further communications in fourteen requests, provided communication of an "unidentified nature" but no records in three requests, and ignored two requests entirely).  But here, particularly in light of the small sample size, the

variation in the three cases cuts against an inference that the FBI is acting pursuant to an informal or formal policy and, by definition, undermines the contention that the FBI is engaged in a persistent practice.

ACLJ's response, in essence, is to describe the FBI's behavior at a higher level of generality. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 10, ECF No. 12 (acknowledging that "the previous FOIA lawsuits the FBI forced it to file in order to obtain records as required by the FOIA are in certain ways factually distinct," but maintaining that "the bottom line inference remains that the ACLJ must file lawsuits against the FBI to receive records, get the FBI to conduct appropriate searches, or produce all non-exempt information as it is required to do under the FOIA"). The Court agrees that, in general (and as in *Judicial Watch*), superficial differences in agency responses should not defeat a policy-or-practice claim. But here, ACLJ's argument boils down to the contention that the FBI, like many agencies engaged in repeat litigation with regular FOIA litigants, has violated FOIA multiple times in different ways in response to three novel kinds of requests. To the Court's knowledge, an agency policy or practice has never been inferred from such a diversity of conduct.

ACLJ's most plausible argument rests on the idea that *Judicial Watch* makes persistent or prolonged delay itself actionable, regardless of the kind of request or reason for the delay. *See* 895 F.3d at 780 ("[A] plaintiff states a plausible policy or practice claim under *Payne* by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements."). And while the complaint characterized the FBI's missteps in different ways, there is a modest pattern of delays across the three episodes: the FBI did not issue a determination as to *any* of the three requests within the statutorily-required time period, and, in all three cases, only started producing documents after

lawsuits were filed. However, notwithstanding some of its language, *Judicial Watch* did not rely on missed deadlines alone; rather, it conducted a fact- and context-sensitive analysis that focused on the similar and straightforward nature of the requests and the sheer number of times that they were ignored. Moreover, it recognized that "not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief." *Id.* at 782. And here, there is little, if anything, beyond the delays themselves that "could signal the agency has a policy or practice of ignoring FOIA's requirements." *Id.* at 780.

In declining to recognize a policy-or-practice claim here, the Court does not mean to endorse or excuse the FBI's alleged noncompliance. But FOIA offers its own mechanism for disciplining an agency's unjustified conduct in individual cases: fee awards. *See Davy v. Cent. Intelligence Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (noting a factor favoring the award of fees is "whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior") (internal citations and quotations omitted). This counsels against inferring a policy or practice from a small number of episodes.

For all these reasons, the Court will grant Defendant's motion and dismiss the policy-or-practice claim. However, in part because the complaint is somewhat unclear about the exact nature of the pattern or policy at issue, the Court will dismiss it without prejudice.

## V.  CONCLUSION

The Defendant's partial motion to dismiss is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 2, 2020                                                                           RUDOLPH CONTRERAS
                                                                                                            United States District Judge