IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**AMERICAN CENTER FOR LAW AND JUSTICE,**

    **Plaintiff,**

      v.

**FEDERAL BUREAU OF INVESTIGATION,**

    **Defendant.**

Civil Action No. 19-cv-02643

# Exhibit C

# FBI-FOIPA-CONSULTS

| | |
|---|---|
| **From:** | Villanueva, Valeree A (OIP) <Valeree.A.Villanueva@usdoj.gov> |
| **Sent:** | Friday, August 02, 2019 5:38 PM |
| **To:** | FBI-FOIPA-CONSULTS |
| **Cc:** | FBI-FOIPA-CONSULTS |
| **Subject:** | Misdirected FOIA Request of Jordan Sekulow - Expedition Requested |
| **Attachments:** | Sekulow - FBI Route Memo.pdf; Sekulow - FOIA Request.pdf |
| **Importance:** | High |

Please see the attached misdirected requests received by the Office of Information Policy (2019-006171).

*For your information, the requester is seeking expedited processing of this request.*

---

**Valeree A. Villanueva**
Reviewer, Initial Request Staff
Office of Information Policy
U.S. Department of Justice
202-514-4594 (Direct Line)

AUG 07 2019



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

August 2, 2019

**MEMORANDUM**

TO: David M. Hardy
Chief
RIDS/RMD
Federal Bureau of Investigation

FROM: Initial Request Staff

SUBJECT: Misdirected Freedom of Information Act (FOIA) Requests
Received by Office of Information Policy (OIP) DOJ-2019-006171

    Please be advised that the attached misdirected FOIA request from Jordan Sekulow, with the American Center for Law and Justice, was received by this Office on July 26, 2019. Because it is seeking records of interest to the Federal Bureau of Investigation (see page 4 of the attached request), we are forwarding this request to your Office for processing and direct response to the requester. For your information, at this time we are not processing this request on behalf of any of the senior management offices. **Please note, the requester is seeking expedited processing**. Additionally, this Office did not make a determination regarding the requester's fee category. Should you have any questions regarding this matter, please contact Valeree Villanueva of this Office at 202-514-4594 or **Valeree.A.Villanueva@usdoj.gov**.

Attachment



## ACLJ
### American Center for Law & Justice

July 25, 2019

Douglas Hibbard
Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001
Tel: (202) 514-FOIA
Fax: (202) 514-1009

RECEIVED

JUL 2 6 2019

Office of Information Policy

RE: **FOIA Request for Records of James Comey and Other FBI Officials' Communications With or About Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar**

Dear Sir or Ma'am:

This letter is a request ("Request") in accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the corresponding department/agency implementing regulations.

The Request is made by the American Center for Law and Justice ("ACLJ")[1] on behalf of its members. The ACLJ respectfully seeks expedited processing and a waiver of fees related to this Request as set forth in an accompanying memorandum.

To summarize, this Request seeks records pertaining to the Federal Bureau of Investigation's (FBI) former Director, James Comey, and his communications with or about, and/or any records regarding, Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar; as well as any communications with and/or files regarding Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar of General Counsel James Baker; Deputy Director/Acting Director Andrew McCabe; Deputy Assistant Director of Counterintelligence Peter Strzok, McCabe's Deputy Counsel, Lisa Page; and Comey's Chief of Staff, James Rybicki, David Bowdich (Director's Office - DO), Michael Steinbach (Director's Office - DO), Trisha Anderson (OGC), E.W. Bill Priestap (Counterintelligence Division - CD), and Jonathan Moffa (Counterintelligence Division - CD).

---

[1] The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The ACLJ regularly monitors governmental activity and works to inform the public of such affairs. The ACLJ and its global affiliated organizations are committed to ensuring governmental accountability and the ongoing viability of freedom and liberty in the United States and around the world.

★

201 Maryland Avenue, N.E.
Washington, DC 20002
202-546-8890

**To the best of the Requestor's knowledge and belief, this Request seeks records of which the Department of Justice (DOJ), and its components the National Security Division (NSD), the Office of the Attorney General (AG), the Office of the Deputy Attorney General (DAG), the Criminal Division (CD), the Office of Legal Counsel (OLC), the Office of Legal Policy (OLP), the Executive Office for United States Attorneys (EOUSA), and the Federal Bureau of Investigations (FBI), would be custodians.**

## Background

Pursuant to DOJ FOIA regulation 28 C.F.R. §16.3(b), this Background addresses "the date, title or name, author, recipient, subject matter of the record[s]" requested, to the extent known.

According to a breaking news report by *RealClearInvestigations*, "Comey had an agent inside the White House who reported back to FBI headquarters about Trump and his aides, according to other officials familiar with the matter."[2] According to the report:

> At the same time Comey was personally scrutinizing the president during meetings in the White House and phone conversations from the FBI, he had an agent inside the White House working on the Russia investigation, where he reported back to FBI headquarters about Trump and his aides, according to officials familiar with the matter. The agent, Anthony Ferrante, who specialized in cyber crime, left the White House around the same time Comey was fired and soon joined a security consulting firm, where he contracted with BuzzFeed to lead the news site's efforts to verify the Steele dossier, in connection with a defamation lawsuit.
>
> Knowledgeable sources inside the Trump White House say Comey carved out an extraordinary new position for Ferrante, which allowed him to remain on reserve status at the FBI while working in the White House as a cybersecurity adviser.
>
> "In an unprecedented action, Comey created a new FBI reserve position for Ferrante, enabling him to have an ongoing relationship with the agency, retaining his clearances and enabling him to come back in [to bureau headquarters]," said a former National Security Council official who requested anonymity.
>
> "Between the election and April 2017, when Ferrante finally left the White House, the Trump NSC division supervisor was not allowed to get rid of Ferrante," he added, "and Ferrante continued working — in direct conflict with the no-contact policy between the White House and the Department of Justice."[3]

---

[2] Paul Sperry, *Justice Dept. Watchdog Has Evidence Comey Probed Trump, on the Sly*, REALCLEARINVESTIGATIONS (July 22, 2019), https://www.realclearinvestigations.com/articles/2019/07/22/comey_under_scrutiny_for_own_inquiry_and_misleading_trump_119584.html.
[3] *Id.*

Further:

> Another FBI official, Jordan Rae Kelly, who worked closely with Mueller when he headed the bureau, replaced Ferrante upon his White House exit (though she signed security logs for him to continue entering the White House as a visitor while he was working for BuzzFeed). Kelly left the White House last year and joined Ferrante at FTI Consulting.
>
> Working with Comey liaison Ferrante at the NSC in early 2017 was another Obama holdover — Tashina Gauhar, who remains a top national security adviser at the Justice Department.
>
> In January 2017, Gauhar assisted former acting Attorney General Sally Yates in the Flynn investigation. Later, she helped Deputy Attorney General Rod Rosenstein resist, initially, Trump's order to fire Comey. Gauhar also took copious notes during her meetings with White House lawyers, which were cited by Mueller in the section of his report dealing with obstruction of justice.[4]

## Records Requested

For purposes of this Request, the term "record" is "any information" that qualifies under 5 U.S.C. § 552(f), and includes, but is not limited to, the original or any full, complete and unedited copy of any log, chart, list, memorandum, note, correspondence, writing of any kind, policy, procedure, guideline, agenda, handout, report, transcript, set of minutes or notes, video, photo, audio recordings, or other material. The term "record" also includes, but is not limited to, all relevant information created, stored, received or delivered in any electronic or digital format, e.g., electronic mail, instant messaging or Facebook Messenger, iMessage, text messages or any other means of communication, and any information generated, sent, received, reviewed, stored or located on a government *or private* account or server, consistent with the holdings of *Competitive Enterprise Institute v. Office of Science and Technology Policy*, No. 15-5128 (D.C. Cir. July 5, 2016) (rejecting agency argument that emails on private email account were not under agency control, and holding, "If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served.").

For purposes of this Request, the term "briefing" includes, but is not limited to, any meeting, teleconference, electronic communication, or other means of gathering or communicating by which information was conveyed to one or more person(s). For purposes of this Request, all sources, documents, letters, reports, briefings, articles and press releases cited in this Request are incorporated by reference as if fully set forth herein.

**For purposes of this Request, and unless otherwise indicated, the timeframe of records requested herein is <u>January 1, 2016, through January 1, 2019.</u>**

---

[4] *Id.*

3

Pursuant to FOIA, 5 U.S.C. § 552, ACLJ hereby requests that the FBI respond to the following numbered requests and produce all responsive records:

1. All records concerning or relating in any manner to the communications of former FBI Director James Comey with or about, including forwarded email messages or CC or BCC email messages, and/or any records of James Comey regarding, Anthony Ferrante, Jordan Rae Kelly, or Tashina Gauhar.

2. All records concerning or relating in any manner to the communications of General Counsel James Baker; Deputy Director/Acting Director Andrew McCabe; Deputy Assistant Director of Counterintelligence Peter Strzok, McCabe's Deputy Counsel, Lisa Page; and Comey's Chief of Staff, James Rybicki, David Bowdich (Director's Office - DO), Michael Steinbach (Director's Office - DO), Trisha Anderson (OGC), E.W. Bill Priestap (Counterintelligence Division - CD), and Jonathan Moffa (Counterintelligence Division - CD), with or about, including forwarded email messages or CC or BCC email messages, and/or any other records ever under the custody or control of these individuals, regarding Anthony Ferrante, Jordan Rae Kelly, or Tashina Gauhar.

3. All of James Comey's emails **from April 1, 2016, to May 31, 2017**.

## CONCLUSION

If this Request is denied in whole or in part, ACLJ requests that, within the time requirements imposed by FOIA, you support all denials by reference to specific FOIA exemptions and provide any judicially required explanatory information, including but not limited to, a *Vaughn* Index.

Moreover, as explained in an accompanying memorandum, the ACLJ is entitled to expedited processing of this Request as well as a waiver of all fees associated with it. The ACLJ reserves the right to appeal a decision to withhold any information sought by this request and/or to deny the separate application for expedited processing and waiver of fees.

Thank you for your prompt consideration of this Request. Please furnish all applicable records and direct any responses to:

Jordan Sekulow, Executive Director            sekulow@aclj.org
Abigail Southerland, Senior Litigation Counsel   asoutherland@aclj.org
Benjamin P. Sisney, Senior Litigation Counsel    bsisney@aclj.org
American Center for Law and Justice
201 Maryland Ave., NE
Washington, D.C. 20002-5703
(202) 546-8890; (202) 546-9309 (fax)

I affirm that the foregoing request and attached documentation are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Jordan Sekulow
Executive Director

Abigail Southerland
Senior Litigation Counsel

Benjamin P. Sisney
Senior Litigation Counsel



**ACLJ**
American Center
*for* Law & Justice

July 25, 2019

RE: FOIA Request for Records of James Comey and Other FBI Officials' Communications With or About Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar

<u>MEMORANDUM IN SUPPORT OF REQUESTED FEE WAIVER AND EXPEDITED PROCESSING</u>

The American Center for Law and Justice ("ACLJ") respectfully submits this Memorandum for fee waiver and expedited processing in support of its Freedom of Information Act Request ("FOIA") request to the U.S. Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI").

I. <u>FEE WAIVER REQUEST</u>

The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The ACLJ's mission is to educate, promulgate, conciliate, and where necessary, litigate, to ensure that those rights are protected under the law. The ACLJ regularly monitors governmental activity with respect to governmental accountability. The ACLJ and its globally affiliated organizations are committed to ensuring the ongoing viability of freedom and liberty in the United States and around the world. By focusing on U.S. constitutional law and governmental accountability, the ACLJ is dedicated to the concept that freedom and liberty are universal, God-given, and inalienable rights that must be protected.

The ACLJ requests a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii). Under this section, fees may be waived or reduced if the requester falls within a category established under § (a)(4)(A)(ii), which includes a "representative of the news media," § (a)(4)(A)(ii)(II), and if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," § (a)(4)(A)(iii). The ACLJ qualifies for a fee waiver as a "representative of the news media," *id.* § (a)(4)(A)(ii)(II), and because the information sought is "not for a commercial purpose," § (a)(4)(A)(iii). Moreover, the ACLJ intends to widely disseminate the information obtained to the public because as explained in detail *infra*, "it is likely to contribute significantly to the public understanding of the operations or activities of the government," § (a)(4)(A)(iii), agency and actors mentioned in the FOIA request.

### A.     The ACLJ Qualifies as a News Media Representative:

The ACLJ qualifies as a "representative of the news media," as defined under 5 U.S.C. § 552(a)(4)(A)(ii), because the ACLJ, for the purposes explained above, "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* The ACLJ's audience is generally comprised of those interested in our mission and legal activities as described above. The ACLJ reaches a vast audience through a variety of media outlets, including the Internet (World Wide Web page, www.aclj.org), radio, television, press releases, and direct mailings to our supporters.

For example, the ACLJ's Internet site received an average of 600,000 unique visitors per month in 2017, with over 24,000,000 page views. Our current email list holds 1,050,000 active names (actual list size is 3,937,795). In 2017, the ACLJ sent 288,000,000 emails.

The ACLJ's radio audience consists of more than 1,150,000 estimated daily listeners on more than 1,050 radio stations nationwide, including SiriusXM satellite radio. Additionally, the ACLJ hosts a weekly television program, Sekulow, broadcast on eight networks: Cornerstone Television, Daystar Television Network, AngelOne, KAZQ, TBN, VTN, The Walk TV, and HisChannel. *See* http://aclj.org/radio-tv/schedule (listing schedule).

The ACLJ also disseminates news and information to over 1,000,000 addresses on its mailing lists. In 2015, the ACLJ sent 15,000,000 pieces of mail.

Moreover, our Chief Counsel, Jay Sekulow, has regularly appeared on various news and talk show programs to discuss the issues and events important to the ACLJ and its audiences. These include shows on FOX News, MSNBC, CNN, ABC, CBS, and NBC. In addition to television programs, Jay Sekulow has also appeared on national radio broadcasts. Beyond broadcast outlets, Jay Sekulow's comments appear regularly in the nation's top newspapers, in print and online editions, including but not limited to the Wall Street Journal, New York Times, Washington Times, Washington Post, L.A. Times, and USA Today. His comments also appear in major national newswire services that include, but are not limited to, Associated Press, Reuters, and Bloomberg.

### B.     The ACLJ's FOIA Request Meets Fee Waiver Standards Set Forth Under DOJ Regulations Promulgated Under FOIA:

Under 28 C.F.R. § 16.10(c)(1)(i), "[r]equests made by educational institutions, noncommercial scientific institutions, or representatives of the news media are not subject to search fees." § 16.10(c)(1)(i). And, "[n]o search fees will be charged for requests by educational institutions (unless the records are sought for a commercial use), noncommercial scientific institutions, or representatives of the news media." § 16.10(d). Moreover:

> Records responsive to a request shall be furnished without charge or at a reduced rate below the rate established under paragraph (c) of this section, where a component determines, based on all available information, that the requester has demonstrated that:

> (i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and
>
> (ii) Disclosure of the information is not primarily in the commercial interest of the requester.

§ 16.10(k)(1).

The DOJ, in making its determination, considers the following four factors regarding "whether disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of operations or activities of the government":

> (i) The subject of the request must concern identifiable operations or activities of the Federal Government, with a connection that is direct and clear, not remote or attenuated.
>
> (ii) Disclosure of the requested records must be meaningfully informative about government operations or activities in order to be "likely to contribute" to an increased public understanding of those operations or activities. The disclosure of information that already is in the public domain, in either the same or a substantially identical form, would not contribute to such understanding where nothing new would be added to the public's understanding.
>
> (iii) The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area as well as the requester's ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media will satisfy this consideration.
>
> (iv) The public's understanding of the subject in question must be enhanced by the disclosure to a significant extent. However, components shall not make value judgments about whether the information at issue is "important" enough to be made public.

§ 16.10(k)(2)(i)-(iv).

Under section 16.10(k)(3), the DOJ, in making its determination, considers the following two factors regarding "whether disclosure of the requested information is primarily in the commercial interest of the requester":

> (i) The existence and magnitude of a commercial interest, i.e., whether the requester has a commercial interest that would be furthered by the requested disclosure; and, if so,

> (ii) The primary interest in disclosure, i.e., whether the magnitude of the identified commercial interest of the requester is sufficiently large, in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

§ 16.10(k)(3). As the U.S. Court of Appeals for the D.C. Circuit has noted, "Congress amended FOIA to ensure that it is 'liberally construed in favor of waivers for noncommercial requesters.'" *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citing *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 CONG. REC. 27, 190 (1986) (Sen. Leahy))).

The ACLJ's FOIA request meets the DOJ's factors as listed above, qualifying the ACLJ for a waiver of fees, as set forth below.

> **§ 16.10(k)(2)(i): The subject of the request concerns identifiable operations or activities of the Federal Government.**

The ACLJ has requested information and records specifically concerning DOJ and FBI actions surrounding former FBI Director Comey, and various FBI officials on his team, as they pertain to communications with Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar, and all participation in such DOJ/FBI briefings, meetings and communications by the DOJ/FBI and any of its personnel, and all other DOJ/FBI actions related to this meeting, is relevant to shed light on identifiable activities of the government.

> **§ 16.10(k)(2)(ii): Disclosure of the requested records will be meaningfully informative about government operations or activities and will be "likely to contribute" to an increased public understanding of those operations or activities.**

The ACLJ's request will contribute and provide meaningful understanding of United States Government operations or activities within the DOJ and FBI. With respect to the request for records surrounding former Director Comey and his team's communications with or about Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar, these records have not currently been released to the public and will most certainly inform and increase public knowledge (1) about what Comey said to or about these government officials; (2) what Comey's team said to or about these government officials; (3) why Comey or his team stationed these government officials within the White House; and (4) what any of these government officials said to Comey or his team. The request will also reveal what involvement, if any, any other agency or governmental officials had with the FBI's communications with these officials.

> **§ 16.10(k)(2)(iii): The disclosure will contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. The requester has expertise in the subject area as well as the ability and intention to effectively convey**

4

> information to the public. It shall be presumed that a representative of the news media will satisfy this consideration.

Releasing the requested information to the ACLJ will contribute "significantly" to the public's understanding of United States Government operations and activities. The ACLJ has researched and litigated extensively to uphold governmental transparency and accountability. The ACLJ is qualified to analyze and assess whether Comey or his team's communications with Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar, violate pertinent law or regulations or were otherwise inconsistent with the will of the American people.

The ACLJ intends to release the information, once analyzed and assessed, to the public through its numerous media outlets. Those outlets include but are not limited to its Internet website (www.aclj.org), email list, radio programs, television programs, press releases, and regular mailing list, as described above. The audience to which the ACLJ intends to disseminate the requested information is reasonably broad. The ACLJ has been disseminating relevant information concerning fundamental and constitutional freedoms and governmental accountability since its founding in 1990, and has since then expanded its work and notoriety on an international level, achieving credibility in a wide range of media outlets, as described above. Also as described above, the ACLJ qualifies as a representative of the news media and as such, it is presumed that this consideration is satisfied.

> **§ 16.10(k)(2)(iv): The public's understanding of the subject in question will be enhanced by the disclosure to a significant extent. Components shall not make value judgments about whether the information at issue is "important" enough to be made public.**

Releasing the information described above will significantly contribute to the public's understanding through ACLJ review and assessment of the materials and information, and subsequent dissemination of the information to the public. Such review, assessment, and dissemination will help the public understand whether Comey or his team's communications with or about Anthony Ferrante, Jordan Rae Kelly, and/or Tashina Gauhar deserve the media attention the recent breaking news coverage is generating. Where current media reports, though extensive and growing in number, on the subject of this request address the topic, the records requested will provide actual and authoritative sources for what actually happened, who was involved, and why.

> **§ 16.10(k)(3)(i): The requester has no commercial interest, as defined in paragraph (b)(1) of this section, that would be furthered by the requested disclosure.**

As explained and described throughout this Memorandum, the ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law and the public dissemination of information by way of its numerous media platforms. The

5

information sought by the ACLJ is in furtherance of its not-for-profit mission statement. The ACLJ has no commercial interest in the information sought or its dissemination thereof.

> **§ 16.10(k)(3)(ii): A waiver or reduction of fees is justified because the requester had no commercial interest in disclosure. Components ordinarily shall presume that where a news media requester has satisfied the public interest standard, the public interest will be the interest primarily served by disclosure to that requester.**

Again, the ACLJ has no commercial interest in the information sought or its dissemination thereof. Rather, its interest is purely to further its not-for-profit mission. Therefore, its interest cannot be founded "primarily" in a commercial interest. This is especially so because the ACLJ cannot operate for a commercial purpose under its grant of 501(c)(3) tax-exempt status.

For these reasons, the ACLJ is entitled to a fee waiver.

## II. EXPEDITED PROCESSING REQUEST

The ACLJ seeks expedited processing of its request under 5 U.S.C. § 552(a)(6)(E), and the DOJ's attendant regulation, 28 C.F.R. § 16.5(e). As defined by statute, a "compelling need" is one "with respect to a request made by a person primarily engaged in disseminating information," where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). According to 28 C.F.R. § 16.5(e)(1):

> (e) Expedited processing. (1) Requests and appeals shall be processed on an expedited basis whenever it is determined that they involve:
>
> . . . .
>
> (ii) An urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;
>
> . . . .
>
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence.

§ 16.5(e)(1)(ii), (iv). The DOJ's regulation, 28 C.F.R. § 16.5(e)(3), provides:

> A requester who seeks expedited processing must submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing. For example, under paragraph (e)(1)(ii) of this section, a

6

requester who is not a full-time member of the news media must establish that the requester is a person whose primary professional activity or occupation is information dissemination, though it need not be the requester's sole occupation. Such a requester also must establish a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally. The existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an "urgency to inform" the public on the topic. As a matter of administrative discretion, a component may waive the formal certification requirement.

§ 16.5(e)(3).

Pursuant to 28 C.F.R. § 16.5(e)(3), the ACLJ's primary professional activity or occupation is information dissemination, though it is not the requester's sole occupation. As detailed above under Section I(A) concerning the requester's qualification as a news media representative:

(1) The ACLJ reaches a vast audience through a variety of media outlets, including the Internet (World Wide Web page, www.aclj.org), radio, television, press releases, and direct mailings to our supporters.
(2) the ACLJ's Internet site received an average of 600,000 unique visitors per month in 2017, with over 24,000,000 page views. Our current email list holds 1,050,000 active names (actual list size is 2,340,690). In 2017, the ACLJ sent 288,000,000 emails.
(3) The ACLJ's radio audience consists of more than 1,150,000 estimated daily listeners on more than 1,050 radio stations nationwide, including SiriusXM satellite radio. Additionally, the ACLJ hosts a weekly television program, *Sekulow*, broadcast on eight networks: Cornerstone Television, Daystar Television Network, AngelOne, KAZQ, TBN, VTN, The Walk TV, and HisChannel. *See* http://aclj.org/radio-tv/schedule (listing schedule).
(4) The ACLJ also disseminates news and information to over 1,000,000 addresses on its mailing lists. In 2015, the ACLJ sent 15,000,000 pieces of mail.
(5) ACLJ Chief Counsel, Jay Sekulow, has regularly appeared on various news and talk show programs to discuss the issues and events important to the ACLJ and its audiences. These include shows on FOX News, MSNBC, CNN, ABC, CBS, and NBC. In addition to television programs, Jay Sekulow has also appeared on national radio broadcasts. Beyond broadcast outlets, Jay Sekulow's comments appear regularly in the nation's top newspapers, in print and online editions, including but not limited to the Wall Street Journal, New York Times, Washington Times, Washington Post, L.A. Times, and USA Today. His comments also appear in major national newswire services that include, but are not limited to, Associated Press, Reuters, and Bloomberg.

The District Court for the District of Columbia found that a non-profit public interest group, not unlike the ACLJ, qualified as "representative of the news media" where the group

disseminated an electronic newsletter and published books. *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003).

Clearly, the ACLJ satisfies the requirement of being one "whose primary professional activity or occupation is information dissemination." 28 C.F.R. § 16.5(e)(3).

Also pursuant to 28 C.F.R. § 16.5(e)(3), the requester "must establish a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally." § 16.5(e)(3). And, "[t]he existence of numerous articles published on a given subject can be helpful in establishing the requirement that there be an 'urgency to inform' the public on the topic." § 16.5(e)(3).

The ACLJ's FOIA request qualifies as compelling under the second statutory definition stated above and as one of particular urgency under the DOJ's regulations, because the ACLJ has an urgency to inform the public about the United States government activity that could seriously undermine or enhance the integrity of the justice system of the United States in its investigation of public figures. The DOJ and the FBI have come under significant criticism in connection with the conduct of James Comey and his team. The records requested could exonerate the DOJ and the FBI and restore the public's confidence in those critical government offices. Or the records could confirm or refute the cause for criticism. Either way, the records will educate the public on what really happened.

As one district court explained, the required "compelling need" and "urgency to inform" are determined by three factors:

> (1) [W]hether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.

*ACLU v. United States DOJ*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (citing *Al-Fayed v. CIA*, 254 F.3d 300, 310 (2002)).

Such is the case presented by the ACLJ's FOIA request. The ACLJ's request is based upon an urgency to inform the American public because a delay in review of the information would compromise the integrity of the public's confidence in the nation's law enforcement offices in connection with the conduct of James Comey and his team — which is a currently pressing issue. The actions of some of the highest-ranking officials in the United States remain under close scrutiny with regard to the DOJ and FBI's decisions while James Comey and his team occupied office. As mentioned in the ACLJ's request, which is incorporated by reference as if fully set forth herein, the press is currently and actively reporting on these very issues. *Numerous* media and press articles have been published on major and minor news outlets, which have not been cited or included herein for purposes of not burdening the request-recipients with excess paper.

8

Without the immediate release of the information requested, the American public will remain in the dark with respect to its own government's activities, functions, and decisions concerning the conduct of James Comey – particularly with respect to the report that he placed and communicated with an operative within the White House, and thus cannot hold their government officials accountable. Moreover, a delay in releasing the information prolongs justice and serves only to further embarrass the United States both domestically and internationally, and confuse the public about what actually happened, as delay is perceived as an attempt to cover up information or to shift or avoid blame or culpability. Thus, governmental accountability in justice and integrity serve as significant public interests at stake. The records requested herein are the subject of current and ongoing media reporting. This is a current, ongoing issue and the public's right to now is best served by expedited processing.

Clearly, "the request concerns a matter of current exigency to the American public"; "the consequences of delaying a response would compromise a significant recognized interest"; and "the request concerns federal government activity." *ACLU*, 321 F. Supp. 2d at 29.

\* \* \* \* \*

Accordingly, the ACLJ respectfully submits a request for waiver of fees and expedited processing of its contemporaneously submitted FOIA request.

### III. CERTIFICATION

In satisfaction of certification requirements under 5 U.S.C. § 552(a)(6)(E)(vi) and corresponding regulations, the ACLJ incorporates by reference herein all relevant facts and information as stated in the ACLJ's FOIA request in support thereof and certifies that the information provided and stated herein is true and correct to the best of the undersigned's knowledge and belief.

Respectfully submitted,

*/s/ Jordan Sekulow*
Jordan Sekulow
Executive Director

*/s/ Abigail Southerland*
Abigail Southerland
Senior Litigation Counsel

*/s/ Benjamin P. Sisney*
Benjamin P. Sisney
Senior Litigation Counsel

